Jon H. Weiner, OSB #993944
jweiner@nw-attorneys.com
Law Office of Jon Weiner
1415 Commercial Street SE
Salem, OR 97302
Tel: (503) 399-7001
Fax: (503) 399-0745

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

STEPHEN ORMSBY,

          Plaintiff,

     v.

SUNBELT RENTAL, INC., a foreign
business corporation, licensed to do business
in Oregon,

          Defendant.

Case No. 6:15-cv-1403

**RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

_____

## I. RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, plaintiff responds to defendants' motion for summary

judgment and objects to all relief requested therein.  As set forth below, the existence of genuine

issues of material fact preclude summary judgment.

Page 1 of 34 – RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## II. MEMORANDUM OF LAW

### A.  INTRODUCTION

Plaintiff asserts several claims under the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA) and analogous state law.

### B.  STATEMENT OF FACTS

Plaintiff was employed at Sunbelt from November 19, 2012 until May 14, 2014.  *Ormsby Dep. 48:3-4; Ex. 47 to Ormsby Dep. 284:22-285:11.*  Plaintiff suffered from  disabling migraine headaches that caused him to miss work. *Ormsby Dep.* 168:14-169:7; 351:4-19. Approximately four to five months prior to plaintiff's discharge, his manager Mike Varnell became aware that plaintiff suffered from migraines and had attendance issues relating to migraines. *Varnell Dep. 17:3-18:7; 19:16-20.*  However, Varnell did not offer or address medical leave (intermittent or otherwise) as an accommodation for plaintiff's migraine-related absences.  Similarly, Varnell did not go to human resources with respect to plaintiff's need for such medical leave. *Varnell Dep. 21:1-25.*

Human resources territory manager Julie Burton never discussed with plaintiff his rights under the Family and Medical Leave Act (FMLA) or the Oregon Family Leave Act (OFLA). *Ormsby Dep.300:9-22;  Burton Dep. p.11:18-18; Ex. 5 to Burton Dep.* However, Burton did discuss plaintiff's absences with him – and the need to avoid further last-minute absences until he had accrued sufficient "personal time off" (PTO) – during the final week or so of his employment. *Ormsby Dep. p.306:16-21; 268:7-25.* Ms. Burton was aware of plaintiff's migraines at the time of that discussion, which occurred on May 6, 2016.  *Ormsby Dep. p.339:9-15; Ex. 5 to Burton Dep.*  Plaintiff was never made aware of his rights under OFLA or FMLA or his potential entitlement to leave (intermittent or otherwise). *Ormsby Dep. p.332:19-334:4;*

Page 2 of 34 – RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Burton Dep. p.11:18-18. Burton Dep. p26:9-14*

Sunbelt has a benefits specialist for each region of the United States. *Glass Dep. p.5:9-25.* These specialists handle inquiries regarding FMLA. *Glass Dep. p. 6:9-14*. Whenever a manager, employee, or human resources employee engages in a dialogue with a benefits specialist, and there is the potential that an employee may be entitled to FMLA leave, a file is opened in the specialist's office. *Glass Dep. p.10:14-11:14*. There is no documentation of any communication whatsoever with the benefits specialists' office regarding plaintiff prior to his discharge. *Glass. Dep. p.11:15-22. Ex 1 to Glass Dep.* It is Sunbelt's practice to provide documents to employees who may need intermittent leave under FMLA or OFLA. None of that was ever provided to plaintiff. *Burton Dep. p.33:22-34:13*.

Varnell asserts that he first learned of plaintiff's migraine problem when plaintiff came to work one day after taking medication, about five months prior to plaintiff's discharge. *Varnell Dep., p.18:21-19:1*. Varnell further asserts that he discussed the Family Medical Leave Act FMLA with plaintiff with respect to his migraine medication, since the medication would interfere with plaintiff's ability to safety operate vehicles and heavy machinery. *Varnell Dep. 19:2-9*. However, plaintiff indicated he would not be taking the medication. *Varnell Dep. 19:10-15*. Plaintiff never again went to work after taking that medication. *Ormsby Dep. 313:21-22; 314:13-315:2*. Varnell never discussed family or medical leave with plaintiff regarding plaintiff's migraine-related absences. *Varnell Dep. 21:1-25*.

Plaintiff had several migraine-related absences. *Ormsby Dep. 168:14-169:7; 351:4-19; Ex 27, 28, 31, 41; Varnell Dep. Ex 4; Ormsby Dep. 313:25-314:1; 316:8-16; 317:13-17*. In particular, plaintiff had migraine-related absences on March 10, 2014 and May 9, 2014. *Varnell Dep. p.37:7-12; Burton Dep. p.13:4-14; 28:1-7; Ex. 6 to Burton Dep. Ormsby Dep. 371:3-7.Ex*

Page 3 of 34 – RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*2 to Varnell Dep.; Ex 31 to Ormsby Dep.*  Sometimes, because of the severity of his migraines plaintiff was not able to call prior to his shift to advise that he was going to be absent. *Ormsby Dep. p. 168:14-169:7; 334:5-7; 351:4-19*.  At one point, when plaintiff asked whether he could be excused from calling in advance in such situations, plaintiff was told by Varnell that he would have to give one days' notice prior to being absent for a migraine. *Ormsby Dep., p.333:17-23.*

    In addition to migraine-related absences, plaintiff  had a pre-approved absence from work due to appointments with his daughter's special education provider, speech therapist, and psychological therapist on April 30, 2014. *Ormsby Dep., p.304:15-17; 337:16-338:19; 379:1-15; Ex. 39 to Ormsby Dep*. Varnell withdrew his approval for that absence on April 29, 2014, but it was too late for plaintiff to cancel the appointments. *Ormsby Dep. p.305:12-20*. Plaintiff is the sole custodial parent of a special needs child. *Ormby Dep. p.347:22-24*; 379:1-3*; Ex 8 to Ormsby Dep*. HR Regional Manager Burton asserted that the April 30, 2014 absence had nothing to do with plaintiff's discharge. *Burton Dep. p.18:2-16*.  However,  the day after that absence manager Varnell sent an email complaining about this absence to Burton.  The next day Burton sent herself an email tracking plaintiff's last minute absences. *Varnell Dep Ex 5; Burton Dep Ex 3; Burton Dep p.18:17-19:10*. In his email to Burton Varnell  states "[p]lease review and let me know what my options are." By making that statement, Varnell was exploring the possibility of discharging plaintiff. *Ex. 5 to Varnell Dep.; Varnell Dep. p.38:12-19; 39:25-40:3.*

    Plaintiff called in sick on May 9, 2014, advising Varnell that he was dizzy and going to urgent care. Varnell does not recall whether there was any concern that this absence was related to migraines. *Varnell Dep. p.37:7-12*.   Burton was made aware by Varnell that plaintiff had called in sick on May 9, 2014 because he was dizzy and going to urgent care. *Burton Dep. p.13:4-14*; 28:1-7; *Ex. 6 to Burton Dep.*  However, Burton  did not take any action  to determine

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

whether that absence was protected under FMLA or OFLA –and did not consider the absence related to migraines - because "[he] never said he was calling in sick because he had a migraine. He just said he was calling in sick because he was dizzy.  The doctor's note he provided never stated that he had a migraine." *Burton Dep. p.13:10-14; 27:11-18.*  Similarly, Burton states "I thought it was unrelated to migraines since he didn't mention it was a migraine." *Burton Dep. 28:14-15*. This absence was three days after Burton asserts she had a discussion with plaintiff about migraines and intermittent leave. *Burton Dep. p.13:4-9;  22:19-22; Ex. 5 to Burton Dep.*

Plaintiff denies that Burton ever discussed FMLA/OFLA with him, and states he was unaware of his rights under FMLA/OFLA. *Ormsby Dep*. p300:9-22. Rather, plaintiff asserts he was merely told that he could not accrue any more last-minute absences until he accrued additional "PTO." *Ormsby Dep*. p.278:20-24. Burton answered in the negative when asked, "Did you ever speak to him about the medical leave, anything like that." *Burton Dep. p.11:18-18.* Burton describes her May 6, 2014 conversation as follows:

> We also talked about his attendance, where I
> told him that if he needed time off for migraines
> we would track that through intermittent leave and
> require documentation for it as well as it being
> protected, and that was pretty much the entire
> conversation.

*Burton Dep. p26:9-14; Ormsby Dep.300:9-22; p.332:19-334:4; Ex. 5 to Burton Dep.*

Plaintiff's migraines, which often cause him to miss work with little or no notice, varied from "very seldom" to every other week. Plaintiff was disciplined prior to discharge for one such absence (March 10, 2014). *Ormsby Dep*. 371:3-7.*Ex 2 to Varnell Dep.; Ex 31 to Ormsby Dep.* This absence resulted in communications between Burton and Pacific NW District Manager Brent Anderson,  wherein Anderson advised "it would be best to issue a written warning with

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

suspension.  Further issues regarding performance and or attendance in the next twelve months

will then result in term." *Ex. 6 to Varnell Dep, p.2.* Plaintiff was subjected to discipline for this

absence four days after Anderson made that statement. *Ex. 2 to Varnell Dep.*

Varnell admits that it is possible that plaintiff had a migraine that caused his absence on

May 9, 2014. *Varnell Dep. p.25:7-25.*  Burton admits that she had no idea at the time of

plaintiff's discharge which absences related to migraines and which did not. *Burton Dep. p.22:9-*

*14.*  Both Varnell and Burton admit that plaintiff was discharged, in part, based on absenteeism.

*Burton Dep. 22:9-11; Varnell Dep. p.26:15-18.* Plaintiff's discharge notice provides that

"Sunbelt is terminating for excessive absenteeism, unsatisfactory performance, and dishonesty."

*Ex. 1 to Anderson Dep.*  When Burton listed plaintiff's last-minute absences in an email she sent

to herself on May 1, 2014, she listed eight such absences. *Ex. 3 to Burton Dep.* Both Burton and

Varnell are aware that migraines arrive without warning, but did nothing to ascertain which last-

minute absences were migraine related. *Varnell Dep. 25:16-22; Burton Dep. p.20:22-21:15.*

## C. SUMMARY JUDGMENT STANDARD

FRCP 56(c) authorizes summary judgment if no genuine issue exists regarding any

material fact and the moving party is entitled to judgment as a matter of law. The moving party

must show an absence of any issue of material fact. *Celotex Corp. v. Catrell*, 477 U.S. 317, 323,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party does so, the non-moving party

must go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Id.* at

324. The court does "not weigh the evidence or determine the truth of the matter, but only

determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054

(9th Cir. 1999).

When ruling on a motion for summary judgment, the court must view the evidence in the

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd, v. Zenith Radio Corp.*, 475 U.S. 574, 587,106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *Big Apple BMW, Inc. v. BMW of N. Amer. Inc.*, 974 F.2d 1358, 1363 (3rd Cir. 1992), *cert. den.*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). A "material" fact exists if there is a "dispute over facts that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing a claim or defense determines whether a fact is material. *T. W Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987).

Reasonable doubts about the existence of a factual issue should be resolved against the moving party. *Id.* at 630-31. However, a "scintilla of evidence" or "merely colorable" evidence does not represent an issue of fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.), *cert. den.*, 493 U.S. 809 (1989).

## D.  LEGAL ARGUMENT

**1.  Defendants' motion against plaintiff's claims under the ADA and OADA in Counts 1-3 should be denied.**

Defendant addresses the ADA and OADA under the same analytical framework.  In support of that approach, defendant posits that "claims arising under the ADA and OADA are analyzed  together because there is no legal distinction between ADA and OADA jurisprudence." Motion for Summary Judgment, p.8, ¶3.  Defendant is mistaken.  Oregon has rejected the McDonnell Douglas burden shifting approach. *Pascoe v. Mentor Graphics Corp.*, 199 F Supp2d 1034, 1052 (D.Or.2001), citing citing *Callan v. Confederation of Oregon Sch. Admin'rs*, 79 Or.App. 73, 77, 717 P.2d 1252, 1254 (1986).  Plaintiff's state and

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

federal claims must therefore be addressed separately.

**Federal Law (ADA)**

<u>a)  Defendants are not entitled to summary judgment on the issue whether plaintiff is a "qualified individual with a disability."</u>

The ADA prohibits discrimination against a "qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  "'[Q]ualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). An employer discriminates against a qualified individual with a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A)

In order to establish a prima facie case, plaintiff must show that he was "qualified." Defendant asserts that plaintiff cannot perform  his essential job functions.  Defendant argues,

> "Considering Plaintiff's poor performance history, including two serious safety infractions, one legal violation, and errors in delivering and renting the correct equipment, there is sufficient evidence in the record to show that Plaintiff could not perform the essential functions of his job with or without an accommodation. Further, applying Plaintiff's testimony that time off would be a sufficient

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

> accommodation, there is no evidence to suggest that time away from work would
> correct Plaintiff's wholly deficient performance, and Plaintiff does not
> suggest that his migraines caused or affected his poor performance."

Motion for Summary Judgment, p.18¶3 - 19¶1.

In so arguing, defendant impermissibly conflates the first and third steps of the

McDonnell Douglas analysis.  This is the same mistake that the 9th Circuit identified in

*Aragon v. Rebublic Silver State Disposal Inc*., 292 F.3d 654 (2002).  There, the District Court

found that the plaintiff was not qualified for his position because he "failed to show that he

was doing his job well enough to eliminate the possibility that he was laid off for inadequate

job performance." *Id*. at 659. The 9th Circuit rejected that analysis, stating,

> The district court's analysis seems to conflate the minimal inference needed to
> establish a prima facie case with the specific, substantial showing Aragon must make at
> the third stage of the McDonnell Douglas inquiry to demonstrate that Republic's reasons
> for laying him off were pretextual.

*Id*. at 659.

The District of Oregon has recognized that "[t]he Ninth Circuit has warned against

conflating these two stages." *Hire v. Hyperion Solutions Corp*. 2004 WL2260669, at *8 (D.

Or. Oct. 7, 2004).  This warning is in keeping with the 9th Circuit's view that:

> it is important to remember that "[t]he requisite degree of proof necessary to
> establish a prima facie case  [under McDonnell Douglas] ... on summary
> judgment is minimal and does not even need to rise to the level of a
> preponderance of the  evidence." *Wallis v. J.R. Simplot Co*., 26 F.3d 885, 889 (9th
> Cir.1994) (citation omitted) (emphasis added); see also *Sischo-Nownejad v.
> Merced Cmty. College Dist*., 934 F.2d 1104, 1110-11 (9th Cir.1991) ("[T]he
> amount[of evidence] that must be produced in order to create a prima facie case is
> very little.") (quotation marks omitted).

*Aragon*, 292 F.3d at 659.

Page 9 of 34 – RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

As made clear by the above-cited controlling authority, defendant may not rely upon its proffered legitimate non-discriminatory reasons to show that plaintiff was unable to perform his essential job functions.  Absent those prohibited considerations, defendant fails to point to any essential job function that plaintiff is unable to perform.

b) Plaintiff was able to perform his essential job functions with reasonable accommodation

Plaintiff triggered Sunbelt's obligation to provide a reasonable accommodation

In *Barnett v. U.S. Air, Inc*., 228 F.3d 1105, 1112 (9th Cir.2000) (en banc), vacated on other grounds, *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002), the 9th Circuit held,

> the interactive process is a mandatory rather than a permissive obligation on the part of employers under the ADA and that this obligation is triggered by an employee or an employee's representative giving notice of the employee's disability and the desire for accommodation. In circumstances in which an employee is unable to make such a request, if the company knows of the existence of the employee's disability, the employer must assist in initiating the interactive process.

*Barnett*, 228 F.3d at 1114.

A year later, citing *Barnett*, the 9th Circuit concluded that "Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations. (citing *Barnett v. U.S. Air*, 228 F.3d 1105, 1114 (9th Cir.2000)).

*Humphrey v. Mem'l Hospitals Ass'n*, 239 F.3d 1128, 1137 (9th Cir.2001)

An employee is not required to use any particular language when requesting an accommodation but need only "inform  the employer of the need for an adjustment due to a

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

medical condition." *Id*. That is, an employee may express the need for an adjustment in "plain English" and without mentioning the ADA or using the phrase "reasonable accommodation." *Barnett*, 228 F.3d at 1112.

The interactive process requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective. Id. at 1114–15.

In *Zivkovic v. Southern California Edison Co*., 302 F.3d 1080 (2002), the 9th Circuit found an applicant's conduct sufficient to constitute a request, where the applicant indicated on his application that he was hard of hearing and stated in his first interview that he would have done better if he had a sign language interpreter. *Id.* at 1089.  In plaintiff's case, he indicated on numerous occasions that he was missing work (often without sufficient advance notice) and that these absences (and attendant lack of notice) were due to migraines.  He asked manager Mike Varnell if he could be excused from the employer's notice requirement when unable to call out sick in advance – and was told to call in for his migraine-related absences one day in advance. *Ormsby Dep., p.333:17-23.*According to Julie Burton, Plaintiff discussed his migraines and the potential for intermittent leave during a telephone conference with her on May 6, 2014. However, defendant failed to continue the discussion or offer any kind of accommodation (intermittent leave or otherwise) for plaintiff's migraines. *Burton Dep. p.11:18-18, 26:9-14; Ex. 5 to Burton Dep.; Ormsby Dep.300:9-22; p.332:19-334:4.*

Instead, defendant discharged plaintiff  based in substantial part on migraine-related absences. *Burton Dep. 22:9-11; Varnell Dep. p.26:15-18; Ex. 1 to Anderson Dep.*

Plaintiff establishes a genuine issue of fact on the issues whether 1) he requested an

accommodation; and 2) Sunbelt possessed knowledge sufficient to trigger its obligation to initiate the interactive process under the ADA.

<u>Intermittent leave and excusal from the employer's call-off notice requirement are reasonable accommodations that would have allowed plaintiff to perform his essential job functions.</u>

The ADA's regulations provide:

> (1) The term reasonable accommodation means:
>
> * * *
>
> (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position; or
>
> (iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.
>
> (2) Reasonable accommodation may include but is not limited to:
>
> * * *
>
> (ii) Job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities.

29 C.F.R. § 1630.2(o); 42 U.S.C. § 12111(9)(B).

An accommodation is reasonable if it "could plausibly have enabled [the employee] adequately to perform her job." *Humphrey v. Mem'l Hospitals Ass'n*, 239 F.3d 1128, 1136 (9th Cir.2001). Either intermittent leave or exemption from Sunbelt's advance call-in requirement would have been sufficient to allow plaintiff to satisfy any attendance-related

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

performance issues he may have had regarding "last minute" call-offs. The Ninth Circuit held, where the employer "did not engage in any such process, summary judgment is available only if a reasonable finder of fact must conclude that 'there would in any event have been no reasonable accommodation available.' " *Dark v. Curry County*, 451 F.3d at 1088 (9th Cir.2006) (quoting *Morton v. United Parcel Serv., Inc*., 272 F.3d 1249, 1256 (9th Cir.2001)).  Although reasonable minds could differ, a reasonable finder of fact could conclude that either of these accommodations were reasonable and available.  At the very least, under *Dark* a reasonable factfinder could conclude that there was "in any event" a reasonable accommodation available. Plaintiff thus establishes a genuine issue of fact whether there existed a reasonable accommodation that would have allowed plaintiff  to perform his essential job functions.

c) Plaintiff's migraines were a substantial motivating factor in defendant's decision to discharge plaintiff.  Plaintiff is not required to establish pretext under the "motivating factor" standard.  Even if plaintiff were required to establish pretext, there exists sufficient evidence of pretext to preclude summary judgment on this and his other claims.

To make a prima facie case of disparate treatment under the ADA, a plaintiff must show that, within the meaning of the ADA, he: "(1) is disabled; (2) is qualified; and (3) suffered an adverse employment action because of [his] disability." *Snead v. Metro. Prop. & Cas. Ins. Co*., 237 F.3d 1080, 1087 (9th Cir.2001). Defendant asserts that plaintiff is unable to satisfy the 3rd element of this prima facie case – causation.  Defendant is mistaken. The 9th Circuit applies the "motivating factor" standard of causation to ADA cases.  In *Head v. Glacier Northwest, Inc*., 413 F.3d 1052, 64 (9th Cir 2005), the Ninth Circuit concluded, "we hold that the ADA outlaws adverse employment decisions motivated, even in part, by

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

animus based on a plaintiff's disability or request for an accommodation—a motivating factor standard." The District of Oregon continues to apply this standard. *Siring v. Oregon State Bd. of Higher Educ. ex rel*, 977 F.Supp.2d 1058, 1063 (D. Or. 2013). Thus, plaintiff is not required to rebut or eliminate defendant's proffered non-discriminatory reasons as factors in its discharge decision. Rather, plaintiff need only show that the discharge decision was motivated "even in part" by discriminatory animus.

Plaintiff first discussed his migraines with Varnell – and requested accommodation – about a month into his employment. *Ormsby Dep* p. 41:20-24. Varnell asserts that he first learned of plaintiff's migraine problem when plaintiff came to work one day after taking medication, about five months prior to plaintiff's discharge. *Varnell Dep., p.18:21-19:1.*

At one point, when plaintiff asked whether he could be excused from calling in advance when his migraines rendered him unable to do so, plaintiff was told by Varnell that he would have to give one days' notice prior to being absent for a migraine. *Ormsby Dep., p.333:17-23.*This sarcastic reply shows that Varnell was openly hostile toward plaintiff's migraine problem.

On May 1, 2014, Burton sent herself an email tracking plaintiff's last minute absences. *Varnell Dep Ex 5; Burton Dep Ex 3; Burton Dep p.18:17-19:10*. In his email to Burton Varnell states "[p]lease review and let me know what my options are." By making that statement, Varnell was exploring the possibility of discharging plaintiff. *Ex. 5 to Varnell Dep.; Varnell Dep. p.38:12-19; 39:25-40:3.* This is prior to the time that plaintiff borrowed the trailer from Sunbelt that allegedly contributed to Sunbelt's discharge decision. *Ormsby Dep*, p. 256:2-8. The timing of Burton's tracking of plaintiff's last minute absences, Varnell's interest in discharging plaintiff, and plaintiff's borrowing of the trailer, permits an inference that the employer was already

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

looking for a reason to discharge plaintiff at the time it allegedly formulated the opinion that it needed to discharge plaintiff for poor performance and dishonesty relating to the trailer.

Plaintiff called in sick on May 9, 2014, advising Varnell that he was dizzy and going to urgent care. Varnell does not recall whether there was any concern that this absence was related to migraines. *Varnell Dep. p.37:7-12.*   Burton was made aware by Varnell that plaintiff had called in sick on May 9, 2014 because he was dizzy and going to urgent care. *Burton Dep. p.13:4-14*; 28:1-7; *Ex. 6 to Burton Dep.*  However, Burton  asserts that she did not consider the absence related to migraines - because "[he] never said he was calling in sick because he had a migraine.  He just said he was calling in sick because he was dizzy.  The doctor's note he provided never stated that he had a migraine." *Burton Dep. p.13:10-14; 27:11-18.*  Similarly, Burton states "I thought it was unrelated to migraines since he didn't mention it was a migraine." *Burton Dep. 28:14-15*. This absence was three days after Burton asserts she had a discussion with plaintiff about migraines and intermittent leave. *Burton Dep. p.13:4-9;  22:19-22; 26:9-14. Ex. 5 to Burton Dep.*  Burton's assertion that she had no idea that the absence was related to migraines borders on ludicrous, and certainly invites an inference that she is being untruthful and hiding the real motivation for plaintiff's discharge – his migraines.

Plaintiff was disciplined prior to discharge for a migraine-related absence (March 10, 2014). *Ormsby Dep*. 371:3-7.*Ex 2 to Varnell Dep.; Ex 31 to Ormsby Dep*. This absence resulted in communications between Burton and Pacific NW District Manager Brent Anderson,  wherein Anderson advised "it would be best to issue a written warning with suspension.  Further issues regarding performance and or attendance in the next twelve months will then result in term." *Ex. 6 to Varnell Dep, p.2.* Plaintiff was subjected to discipline for this absence four days after Anderson made that statement. *Ex. 2 to Varnell Dep.* This chain of events permits an inference

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

that as early as March, 2014, Sunbelt was looking for a way to get rid of plaintiff because of his migraines.

Varnell admits that it is possible that plaintiff had a migraine that caused his absence on May 9, 2014. *Varnell Dep. p.25:7-25.*  Burton admits that she had no idea at the time of plaintiff's discharge which absences related to migraines and which did not. *Burton Dep. p.22:9-14.*  Both Varnell and Burton admit that plaintiff was discharged, in part, based on absenteeism. *Burton Dep. 22:9-11; Varnell Dep. p.26:15-18.* Plaintiff's discharge notice provides that "Sunbelt is terminating for excessive absenteeism, unsatisfactory performance, and dishonesty." *Ex. 1 to Anderson Dep.*  When Burton listed plaintiff's last-minute absences in an email she sent to herself on May 1, 2014, she listed eight such absences. *Ex. 3 to Burton Dep.* Both Burton and Varnell are aware that migraines arrive without warning, but did nothing to ascertain which last-minute absences were migraine related. *Varnell Dep. 25:16-22; Burton Dep. p.20:22-21:15.* This series of events establishes that Varnell and Burton were both aware of the risk that plaintiff was being discharged based at least in part on his migraine-related absences, and did nothing about it. This permits an inference that Varnell and Burton  were motivated by discriminatory and/or retaliatory animus when they discharged plaintiff.

The evidence adduced above provides a strong inference that Sunbelt had enough of plaintiff and his migraine and daughter-related absences as of March 14, 2014, and that plaintiff's May 9, 2014 absence was the straw that broke the camel's back.  The tight temporal proximity of these events only strengthens this inference. Plaintiff produces substantial evidence allowing the inference that the reasons proffered by defendant are not the real reasons for its actions, and that plaintiff's discharge was motivated by discriminatory and/or retaliatory animus arising from plaintiff's disability.

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

**d) Plaintiff's retaliation claims do not fail, because plaintiff engaged in protected activity under the ADA and OADA.**

The Ninth Circuit applies the Title VII framework for retaliation claims to ADA retaliation claims. *Brown v. City of Tucson,* 336 F.3d 1181, 1186 (9th Cir. 2003).   Thus, plaintiff must make out a prima facie case by showing "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Id.* (internal citations omitted); see also *Pardi v. Kaiser Found. Hosps*., 389 F.3d 840, 849 (9th Cir.2004). Temporal proximity between protected activity and adverse action is sufficient to support an inference of causation. *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir.2000). If a prima facie case is established, the burden-shifting analysis applies and the employee will avoid summary judgment unless the employer offers legitimate reasons for the adverse employment actions. If the employer does so, the burden shifts back to the employee to demonstrate a triable issue of fact as to whether such reasons are pretextual. *Pardi,* 389 F.3d at 849. "If the ... plaintiff demonstrates a genuine issue of material fact as to whether the reason advanced by the employee was a pretext, then the retaliation case proceeds beyond the summary judgment stage." *Coons v. Sec'y of the U.S. Dep't of the Treasury*, 383 F.3d 879, 887 (9th Cir.2004).

As noted by defendant, "This Court has accepted a plaintiff's "request for an accommodation" to serve as protected activity. *Carson v. Fedex Ground Package Sys., Inc*., No. CIV 05-1951-AA, 2006 WL 3751226, * 7 (D. Or. Dec. 15, 2006).  Plaintiff establishes a genuine issue of fact whether he has done so. Plaintiff indicated on numerous occasions that he was missing work without sufficient advance notice, and that these absences (and attendant lack of notice) were due to migraines. *Ormsby Dep. p.168:14-169:7; 351:4-19*.  He

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

asked manager Mike Varnell if he could be excused from the employer's notice requirement

when unable to call out sick in advance – and was told to call in for his migraine-related

absences one day in advance. *Ormsby Dep. p.333:17-23*. According to Julie Burton, Plaintiff

discussed his migraines and the potential for intermittent leave during a telephone conference

with her on May 6, 2014.  *Burton Dep. p.26:9-14*.

As demonstrated above, under *Zivkovic v. Southern California Edison Co*., 302 F.3d

1080 (2002) plaintiff's conduct sufficed to constitute a request for accommodation.  Plaintiff

thus establishes a genuine issue of fact whether he engaged in protected activity.  Defendant

is not entitled to summary judgment on plaintiff's ADA retaliation claim.

**State Law**

Defendant presented its arguments under the ADA and state law simultaneously, based

on its supposition that "there is no legal distinction between ADA and OADA

jurisprudence."  Plaintiff thus relies upon the arguments set forth above under federal law in

support of his response to defendant's motion against his state law claims, except as set forth

below.

As noted above, Oregon does not apply the McDonnell Douglas burden shifting framework

to state law discrimination claims. As explained in a District of Oregon case recently,

> Oregon applies the same standard for establishing a prima facie case of
> discrimination as under federal law. *Pascoe v. Mentor Graphics Corp*., 199 F
> Supp2d 1034, 1052 (D.Or.2001), citing *Henderson v. Jantzen, Inc*., 79 Or.App.
> 654, 657, 719 P.2d 1322, 1324, rev denied, 302 Or. 35, 726 P.2d 934 (1986).
> However, Oregon courts have rejected the However, Oregon courts have rejected
> the McDonnell Douglas burden-shifting framework. Id, citing *Callan v.
> Confederation of Oregon Sch. Admin'rs*, 79 Or.App. 73, 77, 717 P.2d 1252, 1254
> (1986). Therefore, when a plaintiff introduces evidence showing that her

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

discharge took place under circumstances giving rise to an inference of unlawful discrimination, and thereby "establishes a prima facie claim of ... discrimination, summary judgment is inappropriate even in the face of assertions by the defendant of nondiscriminatory action." Id, quoting *Hardie v. Legacy Health Sys*., 167 Or.App. 425, 437, 6 P.3d 531, 538 (2000) (citing *Messick v. Horizon Indus. Inc*., 62 F.3d 1227, 1232 (9th Cir1995) (applying *Henderson*, supra )).

*Hire v. Hiperion*, 2004 WL2260669 at*7(D. Or. Oct. 7, 2004)

Thus the prima facie case of disability discrimination under state law is identical to the prima facie case under the ADA. Plaintiff therefore relies upon his arguments that he establishes a prima facie case in each of his ADA claims, for support that he establishes a prima facie case on each of his state law disability-related claims.

a) Defendant is not entitled to summary judgment on plaintiff's claim that he was discharged based on disability.

As noted by this Court in *Hire v. Hiperion*, "when a plaintiff introduces evidence showing that her discharge took place under circumstances giving rise to an inference of unlawful discrimination, and thereby "establishes a prima facie claim of ... discrimination, summary judgment is inappropriate even in the face of assertions by the defendant of nondiscriminatory action." *Id*. at *7.  Application of this standard in a case similar to plaintiff's is set forth in *Lansford v. Georgetown Manor, Inc*., 192 Or.App. 261 (2004).

In *Lansford*, the plaintiff suffered from panic attacks that resulted in multiple absences. On some occasions Lansford would be able to work through her panic attacks. On other occasions she would leave work or miss work altogether.  Once absence lasted  two weeks. Id. at 274.  In July 2000, Lansford was given a written warning for excessive absenteeism (missing seven work periods ranging from a single day to two weeks). *Id*. at 264.  The next month, Lansford's human resources manager wrote the following memorandum to the store

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

manager:

> "Per our conversation this morning regarding [plaintiff], I will forward disability and FMLA [Family Medical Leave Act] paperwork either Friday or Tuesday of next week. If you would please let her know that we should talk sometime next week regarding her situation so that she is taken care of. Either you or [plaintiff] needs to keep me informed as to her status on a weekly basis."

*Id.* at 264.

The next day, Lansford's human resources manager sent another memorandum to the store manager:

> "Please disregard the previous memo regarding [plaintiff] and FMLA and disability. She needs to bring or send us a doctor's note that indicates she has a serious health condition requiring FMLA and disability. At this point we do not know that. Please keep me posted as to the status of [plaintiff]."

*Id*. at 264.

At his deposition, the human resources manager said he wrote the second memo because "there was apparently no perceived need [to discuss] either [FMLA or disability benefits] at that particular time." *Id* at. 265.  Lansford was given a "final warning" for absenteeism approximately three months later because she "was again absent from work and did not call in sick." *Id.* at 267.

Subsequently, the human resources manager "Gruen" allegedly determined that Lansford had misappropriated company property and terminated Lansford's employment. *Id*. at 267. The misappropriation related to an incident where Lansford had taken store merchandise home without either returning it or paying for it within a week of taking it.  The employer's handbook provided that its employees could be terminated for "[a]ny act of dishonesty, including theft or misappropriation of money, time, property, or information." *Id.* at 267.

Page 20 of 34 – RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The trial court granted summary judgment in favor of Lansford.  The court reversed,

reasoning,

> The evidence in this case…indicates that, before defendant became aware of
> facts to support the ground that it cited for terminating plaintiff's employment, it
> considered terminating her employment for other reasons. Specifically, the
> evidence demonstrates that, before Gruen learned that plaintiff had
> "misappropriated company property," Gruen had given plaintiff a number of
> warnings linked to her repeated absences from work, and he was greatly
> concerned about the effect of plaintiff's health on her work. On that evidence, a
> jury could reasonably infer that defendant fired plaintiff because of the disability
> that defendant perceived her to have. Defendant's evidence that it terminated
> plaintiff because she misappropriated  company property would not
> preclude the jury from drawing that inference.

*Id*. at 278.

The *Lansford* court observed that it had come to a similar decision in *Hardie v.*

*Legacy Health System*, 167 Or.App. 425, 6 P.3d 531, *rev. den*. 332 Or. 656, 36 P.3d 973

(2000), where the employer alleged that it discharged an employee for buying a microwave

with the employer's funds and not repaying the employer for five months.  *Lansford*, 192

Or.App. at 277. The court noted that, in *Hardie*,

> We explained that a defendant does not defeat a plaintiff's showing of material
> facts on an employment discrimination claim  " 'merely because [the]
> defendant asserts a nondiscriminatory reason which may or may not persuade the
> trier of fact.' " Hardie, 167 Or.App. at 437, 6 P.3d 531 (quoting Henderson v.
> Jantzen, Inc., 79 Or.App. 654, 658, 719 P.2d 1322, rev. den., 302 Or. 35, 726 P.2d
> 934 (1986)).

Id. at 277-8.

Based on the analysis of pretext and motive set forth in support of plaintiff's federal

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

disability discrimination claim above, under both *Lansford* and *Hardie* plaintiff's disability discrimination claim survives summary judgment.  Defendant is not entitled to summary judgment "merely because [it] asserts a nondiscriminatory reason which may or may not persuade the trier of fact."  Like the defendant in Lansford, "before defendant became aware of facts to support the ground it cited for terminating plaintiff's employment, it considered terminating [his] employment for other reasons."  In plaintifff's case, those reasons arose from discriminatory animus.

**2.    Defendant's motion against plaintiff's claims under the FMLA and OFLA should be denied because plaintiff sets forth *prima facie* cases of interference, discrimination, and retaliation.**

Defendant's state and federal arguments for interference, discrimination, and retaliation are presented simultaneously, based on the proposition  that "[t]his court analyzes FMLA and OFLA claims concurrently."  Plaintiff will thus proceed similarly.

<u>**Facts Common to Plaintiff's FMLA and OFLA claims**</u>

Varnell asserts that he first learned of plaintiff's migraine problem when plaintiff came to work one day after taking medication, about five months prior to plaintiff's discharge.  *Varnell Dep., p.18:21-19:1.*  Varnell further asserts that he discussed the Family Medical Leave Act FMLA with plaintiff with respect to medication, since the medication would interfere with plaintiff's ability to safety operate vehicles and heavy machinery. *Varnell Dep. 19:2-9.* However, plaintiff indicated he would not be taking the medication. *Varnell Dep. 19:10-15.* Plaintiff never again went to work after taking that medication. *Ormsby Dep. 313:21-22; 314:13-315:2.*  Varnell never discussed family or medical leave with plaintiff regarding plaintiff's migraine-related absences. *Varnell Dep. 21:1-25.*

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

Plaintiff had several migraine-related absences. *Ormsby Dep. 168:14-169:7; 351:4-19; Ex 27, 28, 31, 41*; *Varnell Dep. Ex 4; Ormsby Dep. 313:25-314:1; 316:8-16; 317:13-17.* In addition to migraine-related absences, plaintiff had a pre-approved absence from work due to appointments with his daughter's special education provider, speech therapist, and psychological therapist on April 30, 2014. *Ormsby Dep., p.304:15-17; 337:16-338:19; 379:1-15; Ex. 39 to Ormsby Dep.* Plaintiff is the sole custodial parent of a special needs child. *Ormby Dep. p.347:22-24; 379:1-3; Ex 8 to Ormsby Dep.* HR Regional Manager Burton asserted that the April 30, 2014 absence had nothing to do with plaintiff's discharge. *Burton Dep. p.18:2-16.* However, the day after that absence manager Varnell sent an email complaining about this absence to Burton. The next day Burton sent herself an email tracking plaintiff's last minute absences. *Varnell Dep Ex 5; Burton Dep Ex 3; Burton Dep p.18:17-19:10.* In his email to Burton Varnell states "[p]lease review and let me know what my options are." By making that statement, Varnell was exploring the possibility of discharging plaintiff. *Ex. 5 to Varnell Dep.; Varnell Dep. p.38:12-19; 39:25-40:3.*

Plaintiff called in sick on May 9, 2014, advising Varnell that he was dizzy and going to urgent care. Varnell does not recall whether there was any concern that this absence was related to migraines. *Varnell Dep. p.37:7-12.* Burton was made aware by Varnell that plaintiff had called in sick on May 9, 2014 because he was dizzy and going to urgent care. *Burton Dep. p.13:4-14*; 28:1-7; *Ex. 6 to Burton Dep.* However, Burton did not take any action to determine whether that absence was protected under FMLA or OFLA –and did not consider the absence related to migraines - because "[he] never said he was calling in sick because he had a migraine. He just said he was calling in sick because he was dizzy. The doctor's note he provided never stated that he had a migraine." *Burton Dep. p.13:10-14; 27:11-18.* Similarly, Burton states "I

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

thought it was unrelated to migraines since he didn't mention it was a migraine." *Burton Dep.*

*28:14-15*. This absence was three days after Burton asserts she had a discussion with plaintiff

about migraines and intermittent leave. *Burton Dep. p.13:4-9;  22:19-22; Ex. 5 to Burton Dep.*

Plaintiff denies that Burton ever discussed FMLA/OFLA with him, and states he was

unaware of his rights under FMLA/OFLA. *Ormsby Dep*. p300:9-22. Rather, plaintiff asserts he

was merely told that he could not accrue any more last-minute absences until he accrued

additional "PTO." *Ormsby Dep*. p.278:20-24. Burton answered in the negative when asked, "Did

you ever speak to him about the medical leave, anything like that." *Burton Dep. p.11:18-18.*

Burton describes her May 6, 2014 conversation as follows:

> We also talked about his attendance, where I
> told him that if he needed time off for migraines
> we would track that through intermittent leave and
> require documentation for it as well as it being
> protected, and that was pretty much the entire
> conversation.

*Burton Dep. p26:9-14; Ormsby Dep.300:9-22; p.332:19-334:4; Ex. 5 to Burton Dep.*

Plaintiff's migraines, which often cause him to miss work with little or no notice, varied

from "very seldom" to every other week. Plaintiff was disciplined prior to discharge for one such

absence (March 10, 2014). *Ormsby Dep*. 371:3-7.*Ex 2 to Varnell Dep.; Ex 31 to Ormsby Dep.*

This absence resulted in communications between Burton and Pacific NW District Manager

Brent Anderson,  wherein Anderson advised "it would be best to issue a written warning with

suspension.  Further issues regarding performance and or attendance in the next twelve months

will then result in term." *Ex. 6 to Varnell Dep, p.2.* Plaintiff was subjected to discipline for this

absence four days after Anderson made that statement. *Ex. 2 to Varnell Dep.*

Varnell admits that it is possible that plaintiff had a migraine that caused his absence on

Page 24 of 34 – RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

May 9, 2014. *Varnell Dep. p.25:7-25*.  Burton admits that she had no idea at the time of

plaintiff's discharge which absences related to migraines and which did not. *Burton Dep. p.22:9-

14*.  Both Varnell and Burton admit that plaintiff was discharged, in part, based on absenteeism.

*Burton Dep. 22:9-11; Varnell Dep. p.26:15-18*.  Plaintiff's discharge notice provides that

"Sunbelt is terminating for excessive absenteeism, unsatisfactory performance, and dishonesty."

*Ex. 1 to Anderson Dep*.  When Burton listed plaintiff's last-minute absences in an email she sent

to herself on May 1, 2014, she listed eight such absences. *Ex. 3 to Burton Dep*. Both Burton and

Varnell are aware that migraines arrive without warning, but did nothing to ascertain which last-

minute absences were migraine related. *Varnell Dep. 25:16-22; Burton Dep. p.20:22-21:15*.

 a) Plaintiff demonstrates that Sunbelt interfered with his right to take protected leave.

Defendants assert that plaintiff's OFLA and FMLA  interference claims fail because "he

did not properly notify Sunbelt of a need for leave, and even if he had, Sunbelt offered him

leave."  Defendants are mistaken.

Under FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the

exercise of or attempt to exercise any [FMLA rights]." 29 U.S.C. § 2615(a)(1). As noted by

defendant, "the statutory and regulatory language of FMLA makes clear that where an employee

is subjected to negative consequences simply because he has used FMLA leave, the employer

has interfered with the employee's FMLA rights." Motion for Summary Judgment, p.30, ¶2

(citing Xin Liu v. Amway Corp., 347 F.3d 1125, 1135 (9th Cir 2003)).

The federal regulations make clear that "when an employee requests FMLA leave, or

when the employer acquires knowledge that an employee's leave may be for an FMLA-

qualifying reason, the employer must notify the employee of the employee's eligibility to take

FMLA leave within five business days, absent extenuating circumstances. *29 CFR*

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

*825.300(b)(1).* It is employer's responsibility to determine whether the employee is eligible "at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period." *Id.* The employer also has a responsibility to provide an eligibility notice to the employee. If the employer finds that the employee is not in fact eligible, the employer must state at least one reason by the employee is not eligible, and include particular facts, such as months of service with employer, hours of service with employer, and whether the worksite employs 50 or more people within 75 miles of that worksite. *Id. at (2).* Federal regulations state that the the notification of eligibility can be made orally or in writing, but it is clear that a notification of some sort is required to comply with FMLA. *Id.*

Sunbelt has a benefits specialist for each region of the United States. *Glass Dep. p.5:9-25.* These specialists handle inquiries regarding FMLA. *Glass Dep. p. 6:9-14.* Whenever a manager, employee, or human resources employee engages in a dialogue with a benefits specialist, and there is the potential that an employee may be entitled to FMLA leave, a file is opened in the specialist's office. *Glass Dep. p.10:14-11:14.* There is no documentation of any communication whatsoever with the benefits specialists' office regarding plaintiff prior to his discharge. *Glass. Dep. p.11:15-22. Ex 1 to Glass Dep.* It is Sunbelt's practice to provide documents to employees who may need intermittent leave under FMLA or OFLA. None of that was ever provided to plaintiff. *Burton Dep. p.33:22-34:13.*

As set forth above, defendant wholly failed to comply with its obligations under FMLA, and now faults plaintiff for not providing proper notification or certification. Sunbelt acquired knowledge on numerous occasions that plaintiff's leave may have been for an FMLA-qualifying reason. In spite of that knowledge, defendants failed to provide the requisite eligibility notice to plaintiff, and now fault plaintiff for his alleged failure to comply with the requirements of which

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

he was never informed. Defendants deprived plaintiff of a meaningful opportunity to have absences relating to his migraines and his daughter's serious health condition be protected under FMLA. The employer then used plaintiff's FMLA-qualifying leave – which was never characterized as such due to the employer's failure to meet its obligations under FMLA – as a basis for discharging him (and depriving him of the ability to use FMLA leave in the future). Sunbelt thus interfered with plaintiff's rights under FMLA. Plaintiff establishes a genuine issue of fact whether the employer's obligations under FMLA and OFLA were triggered.

Defendant also asserts that "Sunbelt offered him leave." *Varnell Dep. p.19:2-9.* This is incorrect. Although manager Varnell asserts that he "offered" FMLA/OFLA to plaintiff to address the workplace effects of the migraine drug Maxalt, Sunbelt never complied with its eligibility notice requirements under FMLA. *Id.* Moreover, Varnell admits that he never "offered" FMLA with respect to plaintiff's absences. *Varnell Dep. p.21:1-25.* Varnell further admitted that he became aware of plaintiff's migraines approximately five months prior to the end of his employment – and offered plaintiff FMLA at that time – but there is no evidence that Sunbelt ever opened a FMLA file or provided plaintiff with the required paperwork. *Varnell Dep. p.18:21-19:1.* Leave was never offered as to plaintiff's absences, and to the extent there was some sort of "offer" it was faulty. *Varnell Dep. 21:1-25.* Defendant is not entitled to summary judgment based on the assertion that it somehow "offered" leave to plaintiff.

b) <u>Defendant's motion should be denied as to plaintiff's FMLA and OFLA discrimination/retaliation claims because plaintiff availed himself of a protected right and Sunbelt's reasons for termination were related to leave.</u>

In order to prove an FMLA retaliation claim, a plaintiff must show by a preponderance of the evidence that: "(1) involvement in a protected activity under the FMLA; (2) an adverse

Page 27 of 34 – RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

employment action; and (3) a causaul link between the protected activity and the employment action." *Schultz v. Wells Fargo Bank, National Association*, 970 F. Supp. 2d 1039, 1059 (Or. 2013).

The court in *Schultz* further states that "the proximity in time between the protected activity and the allegedly retaliatory employment decision can support an inference of causation." *Id.* at 1054. In *Shultz*, the defendant argued that plaintiff could not show protected leave was a negative factor in her termination because too much time had passed to infer causation. However, the court determined that "time periods of up to a year have been held to support a finding of causation at summary judgment." *Id.* at 1056.

Here, even though plaintiff may not have understood that he was availing himself of his rights under OFLA and FMLA, he exercised his rights under those acts when he accompanied his minor child to her special education, speech therapy, and psychotherapy appointments on April 30, 2014.  Similarly, plaintiff exercised those rights every time he engaged in what should have been intermittent leave. Temporal proximity exists here, as the protected activities and the negative employment decision occurred within a close time frame. The fact that the employer failed to fulfill its obligations under FMLA and OFLA, and thus failed to properly characterize those absences, is immaterial to the protected nature of plaintiff's conduct.

<u>Sunbelt's reasons for termination were related to leave</u>

Approximately four to five months prior to plaintiff's discharge, his manager Mike Varnell became aware that plaintiff suffered from migraines and had attendance issues relating to migraines. *Varnell Dep. 17:3-18:7; 19:16-20.*  However, Varnell did not offer or address medical leave (intermittent or otherwise) as an accommodation for plaintiff's migraine-related absences.  Similarly, Varnell did not go to human resources with respect to plaintiff's need for

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

such medical leave. *Varnell Dep. 21:1-25.*

Human resources territory manager Julie Burton never discussed with plaintiff his rights under the Family and Medical Leave Act (FMLA) or the Oregon Family Leave Act (OFLA). *Ormsby Dep.300:9-22;  Burton Dep. p.11:18-18; Ex. 5 to Burton Dep.* However, Burton did discuss plaintiff's absences with him – and the need to avoid further last-minute absences until he had accrued sufficient "personal time off" (PTO) – during the final week or so of his employment. *Ormsby Dep. p.306:16-21; 268:7-25.* Ms. Burton was aware of plaintiff's migraines at the time of that discussion.  *Ormsby Dep. p.339:9-15; Ex. 5 to Burton Dep.* Plaintiff was never made aware of his rights under OFLA or FMLA or his potential entitlement to leave (intermittent or otherwise). *Ormsby Dep. p.332:19-334:4; Burton Dep. p.11:18-18. Burton Dep. p26:9-14*

Sunbelt has a benefits specialist for each region of the United States.  *Glass Dep. p.5:9-25.* These specialists handle inquiries regarding FMLA.  *Glass Dep. p. 6:9-14.* Whenever a manager, employee, or human resources employee engages in a dialogue with a benefits specialist, and there is the potential that an employee may be entitled to FMLA leave, a file is opened in the specialist's office. *Glass Dep. p.10:14-11:14.*  There is no documentation of any communication whatsoever with the benefits specialists' office regarding plaintiff prior to his discharge. *Glass. Dep. p.11:15-22. Ex 1 to Glass Dep.* It is Sunbelt's practice to provide documents to employees who may need intermittent leave under FMLA or OFLA. None of that was ever provided to plaintiff. *Burton Dep. p.33:22-34:13.*

Plaintiff asserts that he first discussed his migraines with Varnell – and requested accommodation – about a month into his employment. *Ormsby Dep p. 41:20-24.* Varnell asserts that he first learned of plaintiff's migraine problem when plaintiff came to work one day after

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

taking medication, about five months prior to plaintiff's discharge.  *Varnell Dep., p.18:21-19:1.*
Varnell further asserts that he discussed the Family Medical Leave Act FMLA with plaintiff with
respect to medication, since the medication would interfere with plaintiff's ability to safety
operate vehicles and heavy machinery. *Varnell Dep. 19:2-9.*  However, plaintiff indicated he
would not be taking the medication. *Varnell Dep. 19:10-15.*  Plaintiff never again went to work
after taking that medication. *Ormsby Dep. 313:21-22; 314:13-315:2.*  Varnell never discussed
family or medical leave with plaintiff regarding plaintiff's migraine-related absences. *Varnell*
*Dep. 21:1-25.*

Plaintiff had several migraine-related absences. *Ormsby Dep. 168:14-169:7; 351:4-19;*
*Ex 27, 28, 31, 41; Varnell Dep. Ex 4; Ormsby Dep. 313:25-314:1; 316:8-16; 317:13-17.*  In
addition to migraine-related absences, plaintiff  had a pre-approved absence from work due to
appointments with his daughter's special education provider, speech therapist, and psychological
therapist on April 30, 2014. *Ormsby Dep., p.304:15-17; 337:16-338:19; 379:1-15; Ex. 39 to*
*Ormsby Dep.* Plaintiff is the sole custodial parent of a special needs child. *Ormby Dep. p.347:22-*
*24; 379:1-3; Ex 8 to Ormsby Dep.* HR Regional Manager Burton asserted that the April 30, 2014
absence had nothing to do with plaintiff's discharge. *Burton Dep. p.18:2-16.*  However,  the day
after that absence manager Varnell sent an email complaining about this absence to Burton.  The
next day Burton sent herself an email tracking plaintiff's last minute absences. *Varnell Dep Ex 5;*
*Burton Dep Ex 3; Burton Dep p.18:17-19:10.* In his email to Burton Varnell  states "[p]lease
review and let me know what my options are." By making that statement, Varnell was exploring
the possibility of discharging plaintiff. *Ex. 5 to Varnell Dep.; Varnell Dep. p.38:12-19; 39:25-*
*40:3.*

Plaintiff called in sick on May 9, 2014, advising Varnell that he was dizzy and going to

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

urgent care. Varnell does not recall whether there was any concern that this absence was related to migraines. *Varnell Dep. p.37:7-12.*   Burton was made aware by Varnell that plaintiff had called in sick on May 9, 2014 because he was dizzy and going to urgent care. *Burton Dep. p.13:4-14*; 28:1-7; *Ex. 6 to Burton Dep.*   However, Burton  did not take any action  to determine whether that absence was protected under FMLA or OFLA –and did not consider the absence related to migraines - because "[he] never said he was calling in sick because he had a migraine. He just said he was calling in sick because he was dizzy.  The doctor's note he provided never stated that he had a migraine." *Burton Dep. p.13:10-14; 27:11-18.*  Similarly, Burton states "I thought it was unrelated to migraines since he didn't mention it was a migraine." *Burton Dep. 28:14-15*. This absence was three days after Burton asserts she had a discussion with plaintiff about migraines and intermittent leave. *Burton Dep. p.13:4-9;  22:19-22; Ex. 5 to Burton Dep.*

Plaintiff denies that Burton ever discussed FMLA/OFLA with him, and states he was unaware of his rights under FMLA/OFLA. *Ormsby Dep*. p300:9-22. Rather, plaintiff asserts he was merely told that he could not accrue any more last-minute absences until he accrued additional "PTO." *Ormsby Dep*. p.278:20-24. Burton answered in the negative when asked, "Did you ever speak to him about the medical leave, anything like that." *Burton Dep. p.11:18-18*. Burton describes her May 6, 2014 conversation as follows:

> We also talked about his attendance, where I
> told him that if he needed time off for migraines
> we would track that through intermittent leave and
> require documentation for it as well as it being
> protected, and that was pretty much the entire
> conversation.

*Burton Dep. p26:9-14; Ormsby Dep.300:9-22; p.332:19-334:4; Ex. 5 to Burton Dep.*

Plaintiff's migraines, which often cause him to miss work with little or no notice, varied

Page 31 of 34 – RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

from "very seldom" to every other week. Plaintiff was disciplined prior to discharge for one such absence (March 10, 2014). *Ormsby Dep*. 371:3-7.*Ex 2 to Varnell Dep.; Ex 31 to Ormsby Dep.* This absence resulted in communications between Burton and Pacific NW District Manager Brent Anderson,  wherein Anderson advised "it would be best to issue a written warning with suspension.  Further issues regarding performance and or attendance in the next twelve months will then result in term." *Ex. 6 to Varnell Dep, p.2.* Plaintiff was subjected to discipline for this absence four days after Anderson made that statement. *Ex. 2 to Varnell Dep.*

Varnell admits that it is possible that plaintiff had a migraine that caused his absence on May 9, 2014. *Varnell Dep. p.25:7-25.*  Burton admits that she had no idea at the time of plaintiff's discharge which absences related to migraines and which did not. *Burton Dep. p.22:9-14.*  Both Varnell and Burton admit that plaintiff was discharged, in part, based on absenteeism. *Burton Dep. 22:9-11; Varnell Dep. p.26:15-18.* Plaintiff's discharge notice provides that "Sunbelt is terminating for excessive absenteeism, unsatisfactory performance, and dishonesty." *Ex. 1 to Anderson Dep.*  When Burton listed plaintiff's last-minute absences in an email she sent to herself on May 1, 2014, she listed eight such absences. *Ex. 3 to Burton Dep*. Both Burton and Varnell are aware that migraines arrive without warning, but did nothing to ascertain which last-minute absences were migraine related. *Varnell Dep. 25:16-22; Burton Dep. p.20:22-21:15.*

As explained in *Schultz* above, causation can be inferred from timing when a negative employment action follows a protected activity. *Shultz*, 970 F. Supp. 2d at 1055. The *Schultz* court notes that "delays of up to a year have been considered sufficient to support an inference of causation." *Id.* at 1060. Furthermore, there is no bright line regarding temporal proximity and whether temporal proximity exists "must be considered in light of the surrounding circumstances." *Id.* Here, the surrounding circumstances show that temporal proximity existed

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

and that it is sufficient to support an inference of causation. Plaintiff missed days of work in

March, April, and May 2014 due to protected activities relating to his migraines as well as his

daughter's appointments. His employment was then terminated on May 14, 2014. *Ormsby Dep.*

*48:3-4*.

## E. CONCLUSION

      Plaintiff demonstrates the existence of genuine issues of material fact and thus precludes

defendant's motion for summary judgment. Defendant's motion should be denied.

      Dated: June 15, 2016

*/s/ Jon H. Weiner*         
Jon H. Weiner, OSB#993944
jweiner@nw-attorneys.com
Law Office of Jon Weiner
1595 Commercial Street NE
Salem, OR 97301
Tel: (503) 585-2450
Fax: (503) 585-0205
Attorney for Plaintiff

**JON H. WEINER,** Attorney at Law
*Law Office of Jon Weiner*
1415 Commercial Street SE, Salem, OR 97302
Tel. (503)399-7001 Fax (503)399-0745

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of June, 2016, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF and mailed a file stamped copy of this

document with the United States Postal Service to the following addresses:

> James L. Hiller, OSB #772220
> jhiller@hittandhiller.com
> Hitt Hiller Monfils Williams, LLP
> 411 SW Second Avenue, Suite 400
> Portland, Oregon 97204
> Tel: (503) 228-5973
> Fax: (503) 228-4250
> *Of Attorneys for Defendant*
>
> Patricia J. Hill (admitted *pro hac vice*)
> Florida Bar No. 0091324
> pjhill@sgrlaw.com
> Yash B. Dave (admitted *pro hac vice*)
> Florida Bar No. 0068573
> ydave@sgrlaw.com
> Smith, Gambrell & Russell, LLP
> 50 N. Laura Street, Suite 2600
> Jacksonville, Florida 32202
> Tel: (904) 598-6100
> Fax: (904) 598-6240
> *Of Attorneys for Defendant*

*/s/ Jon H. Weiner*
Jon H. Weiner, OSB #993944
jweiner@nw-attorneys.com
Law Office of Jon Weiner
1415 Commercial St. SE
Salem, OR 97302
Tel: (503) 399-7001
Fax: (503) 399-0745
*Attorney for Plaintiff*

Page 34 of 34 – RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT